21-07257MB(JR)

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Chad Lakosky, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for an anticipatory search warrant authorizing the search of 11735 N. 19th Avenue #A30 and B66, Phoenix, Arizona 85029, which location is more particularly described in Attachment A.

2. The purpose of this application is to seize evidence, more particularly described in Attachment B of this search warrant application, of violations of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to commit alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(iii), harboring illegal aliens, and 8 U.S.C. § 1324(a)(1)(A)(v)(II), aiding or abetting the crime of alien smuggling, and 18 U.S.C. § 1956 Conspiracy to Commit Money Laundering.

3. I, Special Agent Chad Lakosky, am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations and to make arrests for offenses enumerated in section 1705 of title 50, United States Code. I am a Special Agent with the United States Department of Homeland Security Investigations (HSI).  I have been so employed since March of 2018.  I am a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I received training in, among other things, criminal investigative techniques, and investigations of violations of United States Codes, to include investigations of Titles 8, 18, 19, 21, and 31.

4.  Prior to my employment with HSI, I was employed by the Pinal County Sheriff's Office in the State of Arizona for 10 years from April of 2008-March of 2018 as a Deputy Sheriff. During that time, I investigated violations of state criminal and civil laws, conducted interviews, conducted covert surveillance, collected evidence, and made arrests for violations of criminal state laws. I was also assigned as a detective to the United States Marshal's Service Violent Offender Task Force, in which my duties included investigations into the whereabouts of state, local, and federal fugitives.  During that assignment, I received training in conducting criminal investigations, covert surveillance, and evidence collection. Prior to that, I was employed as a police officer in the Town of Marana, Arizona from January of 2006-April of 2008, where I had similar duties as my employment as a Deputy Sheriff.  I am also a graduate of the Central Arizona Regional Law Officer's Training Academy (CARLOTA), where I received training in, among other things, criminal investigative techniques, and investigations of violations of criminal and state statutes.

5.  During my law enforcement career, I have received formal training, as well as on-the-job training, relative to the investigation and interdiction of human smuggling and human trafficking. I have become knowledgeable regarding the trafficking methods employed by alien smugglers to conceal, transport, resupply, and harbor aliens present in the United States without admission or parole.

6.  Throughout my career, I have performed various tasks which include, but are not limited to: (a) functioning as a case agent, which entails the management of investigations in several investigative program areas to include human and drug smuggling, financial crimes, immigration violations, and crimes involving child exploitation; (b) performing physical

surveillance and thereby observing and recording movements of persons suspected of various criminal activities; (c) interviewing witnesses, cooperating individuals and informants; (d) written affidavits in support of federal search and seizure warrants; and (e) testified before federal Grand Juries.

7.  Your affiant is familiar with the circumstances described below, both through his personal participation in this investigation and by the discussions your affiant has had with other law enforcement officers who have knowledge of this case.  This affidavit is being submitted for the limited purpose of securing a search warrant; therefore, your affiant has not included every fact known to him or other law enforcement officers concerning this investigation. Your affiant has set forth below only the facts that your affiant believes are necessary to establish probable cause for the issuance of a search warrant.

## PROBABLE CAUSE

### INVESTIGATIVE BACKGROUND

8.  In October 2016, Homeland Security Investigations (HSI) Sells began investigating a large and complex criminal smuggling organization, based in Central America, Mexico, and Phoenix, Arizona for alien smuggling and money laundering (hereinafter the Smuggling Organization).  The Smuggling Organization operates through and around the Tohono O'odham Nation, to Phoenix, Arizona, and throughout the United States.

9.  In January 2018, HSI Sells indicted 27 members of the Smuggling Organization in the District of Arizona, and, to date, 23 have been arrested, 19 have pleaded guilty or have been convicted, and one had their charges dismissed after completing a pre-trial diversion program. This enforcement action severely disrupted the Smuggling Organization; however,

3

the Smuggling Organization has since reorganized and replaced the large Phoenix, Arizona based distribution network with several smaller smuggling cells based in Chandler and Phoenix, Arizona and one that appears to be based in Los Angeles, California.

10. Investigation has shown that individuals who are not citizens of the United States and lack authorization to enter or remain in the United States (hereinafter "illegal aliens") contract with multiple international alien smugglers which supply smuggled aliens to the Smuggling Organization to be smuggled into the United States from Mexico.  The organization then uses load drivers to transport the smuggled aliens away from the border area, to Tucson, Arizona, and ultimately deliver the smuggled aliens to several smuggling cells in the Phoenix, Arizona, area where they are either kept at a motel or residence (hereinafter "stash house") until their sponsors in the Phoenix area can meet with a representative of the organization to pay the smuggling fee and release the illegal alien to the sponsor.  Or, if the illegal alien contracted to be transported further into the United States, the alien is kept at a stash house in Phoenix until payment of the smuggling fees are made. The money for the smuggling fee is often deposited in a bank account that can be accessed by the managers of the organization (hereinafter a "funnel account") or transferred via money service businesses, such as Western Union. Once payment has been made, a vehicle (hereinafter "load vehicle") transports the alien, and other aliens to their final destinations. The illicit proceeds are then smuggled, as bulk currency, back to Tucson, Arizona and into Mexico.

11. OCHOA-Vasquez has been identified as the leader of a Phoenix, Arizona based cell working for and harboring smuggled aliens for numerous cells of the smuggling organization. OCHOA-Vasquez is in contact with known and suspected alien smugglers in Mexico and the United States, as well as several cells responsible for the entry of aliens into the United States

and transportation of the smuggled aliens through and around Border Patrol checkpoints. Once the smuggled aliens arrive in Phoenix, OCHOA-Vasquez and other members of the organization house and feed the aliens, while collecting payment of the smuggling fees. Finally, OCHOA-Vasquez and others employ a crew of drivers and maintain a fleet of vehicles to transport the smuggled aliens to their final destinations, throughout the United States.

12. During the course of the investigation, agents identified a pattern of activity and locations that became indicative of human smuggling and money laundering activity. Agents identified a mechanic shop located at 1931 W. Cheryl Drive in Phoenix, Arizona, trailer homes located at 11735 N. 19th Avenue #A30 and #B66 in Phoenix, Arizona, and an apartment at 2611 N. 36th Street #S104 in Phoenix, Arizona as locations utilized as residences for smuggling co-conspirators, and / or locations used for the receipt, storage, transfer, and harboring of smuggled aliens; and the receipt, storage, transfer, and meeting place of exchange of smuggling proceeds obtained to the related human smuggling activities.

## 1931 W. CHERYL DRIVE PHOENIX, ARIZONA

13. During the investigation, agents identified a mechanic shop called "Carlos Automotive" at 1931 W. Cheryl Drive in Phoenix, Arizona as a mechanic shop utilized and operated by OCHOA-Vasquez and smuggling associate Carlos BARRON-Arredondo to attempt to conceal smuggling and laundering activities under the disguise of the business being made to look like a legitimate mechanic shop. Agents conducted physical surveillance and utilized a pole camera installed in the area that had a view of the shop to identify alien smuggling events. Agents observed OCHOA-Vasquez and BARRON-Arredondo transporting, receiving, and sending aliens to and from the location. Agents observed OCHOA-Vasquez

and BARRON-Arredondo transporting and delivering aliens to multiple locations in the Phoenix, Arizona area, mainly to a stash house occupied and utilized by BARRON-Arredondo at 11735 N. 19th, Avenue #B66 in Phoenix, Arizona.

14. Between September of 2019 through September of 2020, HSI agents obtained federal court orders to intercept the wire and electronic communications of OCHOA-Vasquez and other smuggling/laundering associates.   During that time, agents intercepted nearly 26,966 pertinent communications between members of the smuggling organization coordinating the smuggling of aliens and the laundering of proceeds.  These communications detailed names, addresses, phone numbers, vehicle information, bank account information, and other communications identifying persons, places, and methods utilized by smuggling associates to facilitate the smuggling and laundering operation.  During those intercepts, an automotive shop at 1931 W. Cheryl Drive in Phoenix, Arizona was specifically named or referenced at least 207 times for the pick-up and drop off location of smuggled aliens, and a location where smuggling proceeds were given to drivers to be transported back to smuggling coordinators in Mexico.

15. Utilizing the intercepted wire and electronic communications, physical and electronic surveillance, and database checks, agents identified numerous smuggling events and identified a relative pattern indicative of the methods utilized by OCHOA-Vasquez, BARRON-Arredondo, and others to smuggle aliens and launder proceeds.  Agents identified that alien load vehicles would pick up aliens in and around Tucson, Arizona; the Tohono O'odham Nation, and Sierra Vista, Arizona and transport the aliens to the mechanic shop at 1931 W. Cheryl Drive in Phoenix, Arizona.  The load vehicles would pull into the fenced parking lot of the shop and proceed to a mechanic repair bay at the south end of the property,

6

where the vehicles would disappear from view for a few minutes at a time.  The load vehicle driver would drop the smuggled aliens off inside of the shop out of view from others, at which time BARRON-Arredondo or OCHOA-Vasquez would utilize a white Chevy Suburban, a blue Chevy Sonic, or a black Chevy Tahoe to pull into the same bay after the load vehicle would pull out from the spot.  The aliens would then be loaded into the vehicles and would then be transported to BARRON-Arredondo's trailer/stash house at 11735 N. 19th Avenue #B66 in Phoenix, Arizona, where the aliens were housed until the remainder of smuggling fees were paid by associates of the smuggled aliens.  Once the remaining fees were paid, aliens would then be brought back to the mechanic shop repair bay by BARRON-Arredondo or OCHOA-Vasquez and held there for a short period of time until smuggling associates driving vehicles across the United States would arrive, load the aliens into the vehicles, and then transport them to their final destinations across the United States. OCHOA-Vasquez and his significant other /co-defendant Fabiola FLORES-Galvez were intercepted numerous times discussing the writing of smuggling transactions and payments in ledgers kept at their apartment of 2611 N. 36th Street #S104 in Phoenix, Arizona.  OCHOA-Vasquez and FLORES-Galvez discussed keeping smuggling proceeds inside of the apartment and also conducted numerous transactions in the parking lot of the apartment complex, where money would be given to alien load drivers by OCHOA-Vasquez or FLORES-Galvez in payment for smuggling aliens or for proceeds to be taken to smuggling coordinators in Mexico.

16. Agents observed or intercepted wire and electronic communications coordinating smuggling events occurring at the mechanic shop nearly daily during the timeframe of September 2019 through September 2020, and specifically surveyed smuggling events and conducted

interdictions of smuggled alien load vehicles that had been at the mechanic shop on the following dates:

   a.  September 27, 2019 (8 apprehended aliens)

   b.  November 7, 2019 (3 smuggled aliens observed)

   c.  November 20, 2019 (8 smuggled aliens observed/2 apprehended)

   d.  December 4, 2019 (1 alien apprehended after picking up smuggling proceeds from shop)

   e.  December 8, 2019 (8 smuggled aliens apprehended)

   f.  December 12, 2019 (1 smuggled alien apprehended)

   g.  December 18, 2019 (13 smuggled aliens encountered during traffic stop in Shamrock, Texas)

   h.  February 12, 2020 (13 aliens discussed, 4 apprehended, 9 aliens brought back to shop by smuggling coordinator after HSI agents made arrests at a separate stash house location)

   i.  February 28, 2020 (9 smuggled aliens apprehended in load vehicle that left mechanic shop)

   j.  June 29, 2020 (4 smuggled aliens discussed being dropped off by load vehicle observed on pole camera)

   k.  August 4, 2020 (14 smuggled aliens dropped off at shop, 2 alien load drivers arrested, $9,650 in smuggling proceeds seized as they drove back to Tucson, Arizona)

l.   September 1, 2020 (8 smuggled aliens apprehended in 2 load vehicles destined for mechanic shop. $4,500 in smuggling proceeds seized from load driver, who was one of the drivers arrested during August 4, 2020 event as a load driver)

m.   September 2, 2020 (4 smuggled aliens dropped off, 2 alien load drivers stopped, $8,400 in smuggling proceeds seized as they drove back to Tucson, Arizona)

17. On January 3, 2020 and January 4, 2020, agents intercepted wire communications between OCHOA-Vasquez and a relative identified as "Raul". In those conversations, OCHOA-Vasquez told "Raul" that he had a ".450 caliber" (believed by agents to mean a .45 caliber gun) and that he owned it because it would "tear someone apart" because it was a hollow-point. OCHOA-Vasquez said that the gun is at the trailer "just in case", and added that he also had a "small one". In the January 4, 2020 conversation, OCHOA-Vasquez asked "Raul" if another party involved in a potential gun sale (believed to be in Mexico) was surprised that OCHOA-Vasquez had "those types" of guns, to which "Raul" said that the third party asked "Is that the one Manuel uses?" to which he affirmed.

18. On September 14, 2020, agents intercepted wire communications between OCHOA-Vasquez and BARRON-Arredondo on TD29. During that conversation, OCHOA-Vasquez told BARRON-Arredondo to bring the gun to the mechanic shop because a vehicle with "Mexicans" was parked near a red fence by the shop, and OCHOA-Vasquez said that he would wait there.

19. Agents continued to check 1931 W. Cheryl Drive consistently between October 2020 through May 2021 and continually observed vehicles known to be utilized by BARRON-Arredondo, OCHOA-Vasquez, and other smuggling associates parked at and coming to and from the location, and also observed suspected alien smuggling events during physical

surveillance and review of surveillance video from a camera installed near the shop to monitor activity.

### 11735 N. 19TH AVENUE #A30 AND #B66

20. Using physical surveillance and intercepts of wire and electronic communications, agents identified BARRON-Arredondo's residence/stash house at his trailer at 11735 N. 19th Avenue, which was discussed at least 125 times, in which discussions between OCHOA-Vasquez and BARRON-Arredondo detailed the picking up, housing, and leaving of smuggled aliens from the location.   Agents observed or intercepted wire and electronic communications coordinating smuggling events involving the trailer nearly daily during the timeframe of September 2019 through September 2020, and specifically surveyed smuggling events and conducted interdictions of smuggled alien load vehicles that had been at the mechanic shop and aliens transported to the stash trailer(s) on the following dates:

   a. September 27, 2019 (8 apprehended aliens)

   b. November 7, 2019 (3 smuggled aliens observed)

   c. November 20, 2019 (8 smuggled aliens observed/2 apprehended)

   d. December 4, 2019 (1 alien apprehended after picking up smuggling proceeds from shop)

   e. December 8, 2019 (8 smuggled aliens apprehended)

   f. December 12, 2019 (1 smuggled alien apprehended)

   g. December 18, 2019 (13 smuggled aliens encountered during traffic stop in Shamrock, Texas)

h. February 12, 2020 (13 aliens discussed, 4 apprehended, 9 aliens brought back to shop by smuggling coordinator after HSI agents made arrests at a separate stash house location, then transported to trailer)

i. February 28, 2020 (9 smuggled aliens apprehended in load vehicle that left mechanic shop)

j. June 29, 2020 (4 smuggled aliens discussed being dropped off by load vehicle observed on pole camera)

k. August 4, 2020 (14 smuggled aliens dropped off at shop, 2 alien load drivers arrested, $9,650 in smuggling proceeds seized as they drove back to Tucson, Arizona)

l. September 2, 2020 (4 smuggled aliens dropped off, 2 alien load drivers stopped, $8,400 in smuggling proceeds seized as they drove back to Tucson, Arizona)

21. Agents consistently observed vehicles used by BARRON-Arredondo and OCHOA-Vasquez parked outside of #B66 from at least September 2019 through September 2020.

22. In one particular intercepted wire communication on TD#29 on August 28, 2020, BARRON-Arredondo told OCHOA-Vasquez that he had called the police to come to the trailer to take a report regarding a juvenile breaking the windows of the trailer. OCHOA-Vasquez asked BARRON-Arredondo if the aliens were located at the trailer (#B66) or the "other" property. BARRON-Arredondo told OCHOA-Vasquez that he had to move the aliens from his trailer and show the police the "outside" of the trailer. Further intercepted communications indicated that BARRON-Arredondo had been attempting to rent or buy a second trailer in the area by him, and OCHOA-Vasquez also told BARRON-Arredondo that he had located a

trailer in the same location (park) as his current trailer, but the exact trailer location was not given over intercepted communications.

23. On October 6, 2020, SA Chad Lakosky observed a blue Chevy Sonic 4-door sedan utilized by BARRON-Arredondo and OCHOA-Vasquez for alien smuggling activities parked outside of trailer #A30, and a white Chevy Suburban utilized by BARRON-Arredondo parked outside of trailer #B66.  SA Lakosky identified believed trailer #A30 to be the "other" property referred to in the August 28, 2020 intercepted conversation between OCHOA-Vasquez and BARRON-Arredondo.

24. On October 8, 2020, SA Chad Lakosky and SA Chris Cravens observed the blue Chevy Sonic used in alien smuggling events parked outside of #A30, and no vehicles at #B66 initially. Agents then observed the white Chevy Suburban used by BARRON-Arredondo during alien smuggling events traveling northbound past agents on 19th Avenue near Peoria Avenue.  Agents returned to trailer #B66 a few minutes later and saw the white Chevy Suburban backed in at space #B66 with driver's side front and rear doors open.  Review of recorded surveillance footage from a surveillance camera installed near 1931 W. Cheryl Drive showed two suspected alien load vehicles arriving at the mechanic shop a couple of minutes apart, briefly pulling into then backing out of open mechanic repair bays before backing out a few minutes later, then BARRON-Arredondo pulling into the mechanic shop bay in the white Chevy Suburban, exiting the shop eastbound on Cheryl Drive toward 19th Avenue before being observed by agents northbound on 19th avenue.  This type of activity has become known to agents to be indicative of alien smuggling vehicles arriving at the shop to drop off aliens prior to BARRON-Arredondo transporting the aliens from the shop to stash houses at 11735 N. 19th Avenue.

25. On February 9, 2021, SA Lakosky observed BARRON-Arredondo driving his white Chevy Suburban from the mechanic shop at 1931 W. Cheryl Drive in Phoenix, Arizona and eventually stopped at an O'Reilly auto parts store on 19th Avenue near Ironwood Road. Review of surveillance camera footage at the mechanic shop showed a black SUV (suspected alien load vehicle) pull into the parking lot, park in an opened vehicle bay for a few minutes before leaving the shop.  This activity had become indicative of alien smuggling activity where aliens are dropped off in the shop prior to being transported to BARRON-Arredondo's stash house locations above.  SA Lakosky drove to the stash house locations (11735 N. 19th Avenue #A30 and #B66) and observed OCHOA-Vasquez traveling westbound through the trailer park in his black Chevy Tahoe.  SA Lakosky drove past OCHOA-Vasquez, and a few moments after passing, SA Lakosky observed 2 hispanic males and 1 hispanic female exit the rear passenger seat of the vehicle and disappear under the covered parking in the driveway toward the trailer at #B66, and OCHOA-Vasquez drove away a few moments later.  The subjects appeared to be suspected aliens that were being moved to the stash house by OCHOA-Vasquez.  While watching further activity on the installed surveillance camera a few minutes later, SA Lakosky and SA Cravens saw OCHOA-Vasquez and BARRON-Arredondo met at the mechanic shop.  OCHOA-Vasquez pulled his black Chevy Tahoe into the vehicle bay in which a known alien load vehicle (white Chevy Tahoe) had been parked. A few minutes later, OCHOA-Vasquez backed out of the vehicle bay and left the shop eastbound toward 19th Avenue, followed a few moments later by BARRON-Arredondo in the white Chevy Suburban.  SA Lakosky established surveillance on the stash house trailer park and observed OCHOA-Vasquez turn into the trailer park from 19th Avenue and proceed to #B66, where he stayed for a few minutes before leaving the trailer park.  BARRON-

Arredondo was observed parking at #A30, getting out of the vehicle to pull a trash can into the driveway by the blue Chevy Cruze and tan Mercury Mountaineer, walking into the trailer or a few minutes, walking back out of the trailer and getting into the Chevy Suburban before driving back to space #B66, where he was observed parked backed into the covered parking area.

26. On April 22, 2021, SA Lakosky was driving past trailer #B66 and observed a tan suburban backed into the covered driveway of the trailer.  SA Lakosky observed 2 hispanic male subjects that appeared to be smuggled aliens walking up the stairs away from the vehicle into the trailer as BARRON-Arredondo walked to the open driver door of the vehicle (Arizona license plate 1FA3KB).  SA Lakosky observed BARRON-Arredondo leave the trailer and proceed to a Family Dollar store where he appeared to purchase groceries.

27. Agents continued to check trailer #A30 and #B66 consistently between October 2020 through May 2021 and continually observed vehicles known to be utilized by BARRON-Arredondo, OCHOA-Vasquez, and other smuggling associates parked at both trailer locations.

### 2611 N 36TH ST #S104 PHOENIX, ARIZONA

28. Using physical surveillance and intercepts of wire and electronic communications, agents identified a residence for OCHOA-Vasquez and FLORES-Galvez at 2611 N. 36th St. #S104 in Phoenix, Arizona.  Agents observed vehicles registered to both subjects and utilized by both subjects during smuggling events parked in the parking lot of the apartment complex just to the north of their apartment building. OCHOA-Vasquez also provided the address to co-conspirators to pick up and deliver smuggling proceeds, as well as provided the address to

an auto insurance provider on September 30, 2019, December 16, 2019, June 22, 2020, and September 7, 2020.

29. During the intercepts of wire and electronic communications between September 2019 and September 2020, OCHOA-Vasquez and FLORES-Galvez's residence at 2611 N. 36th Street #S104 was discussed at least 38 times, in which discussions between OCHOA-Vasquez FLORES-Galvez detailed the storage of smuggling fees at the residence, the keeping of ledgers at the house to keep track of smuggling transactions and proceeds received and owed, and meetings with smuggling associates to give or receive smuggling proceeds at the address. The following are just a few examples of such activity:

   a. On September 7, 2020, intercepted wire communications between OCHOA-Vasquez, FLORES-Galvez, and a smuggling coordinator named "Don Chinito". In the conversations, OCHOA-Vasquez told "Don Chinito" that he would send the address to his apartments and that FLORES-Galvez would give him money after calling the money "a little errand".  OCHOA-Vasquez told "Don Chinito" that he would be going to the same apartments that he had been to previously. OCHOA-Vasquez then coordinated with FLORES-Galvez to deliver $5,800 to "Don Chinito", saying that he would be there in approximately 20 minutes. OCHOA-Vasquez then called FLORES-Galvez and told her to wait at the apartment so that he could give the money to "Don Chinito", and told FLORES-Galvez to bring their son (a juvenile male) and something else "to conceal the bag."

   b. On September 14, 2020, intercepted wire communications between OCHOA-Vasquez and FLORES-Galvez showed OCHOA-Vasquez telling FLORES-

Galvez that he was receiving aliens, and that he would call her when she was home so she could write down amounts of money he had received in smuggling proceeds, and to write down additional amounts of money that needed to be paid out to smuggling associates.   OCHOA-Vasquez called FLORES-Galvez and told her to write down the following information (summary):

OCHOA asks FABIOLA writes the following: OCHOA dictates.

- OCHOA receives from "BETIN" ($57,000).  "BETIN" has an over-due payment to OCHOA of: ($15000).

- OCHOA loaned ($30,000) to "BETIN" today.

- OCHOA receives from "AGUILA" ($16,200). "AGUILA" owes ($600) from housing.

- OCHOA receives from "JEFE" ($6,000). "JEFE" owes two (2) from "MARIO" = ($1,000). "CHARLY" is the driver assigned to deliver "MARIO's" aliens.

PICK UP by OCHOA:

- OCHOA picked up four (4) aliens from "JEFE", four (4) aliens from "MARIO", and said those aliens would not pay anything.

- OCHOA receives (3) aliens from "CHARRASCAS".

- OCHOA picked up two (2) aliens with "CHINO".

OCHOA states that's the total for now.  OCHOA is waiting for more aliens to arrive with drivers. FABIOLA asks for the [aliens] that are sleeping. OCHOA says they are from BETIN and they are included.

OCHOA wanted FABIOLA to help him with the list and he will make all the numbers over the weekend.

16

30. Agents continued to check 2611 N. 36th St. #S104 and the parking lot to the north of it and consistently between October 2020 through May 2021 and continually observed vehicles known to be utilized by, OCHOA-Vasquez, and other smuggling associates parked at the location.

### Recent smuggling events

31. On April 6, 2021, US Border Patrol Agents encountered Alan Johnson TOVAR while he was transporting 4 illegal aliens from Marana, Arizona to Phoenix, Arizona. TOVAR claimed that he had picked up the aliens approximately 25 minutes south of Interstate 10 on Sandario Road. TOVAR claimed to have been smuggling aliens for approximately six months and that he was working for "Manuel" and "Flaco". TOVAR said that he worked at "Manuel's" mechanic shop at 1931 W. Cheryl Drive in Phoenix, Arizona, and claimed that he would drop aliens off at the shop and other locations and earn $200-$300 per smuggled alien. A consent search of TOVAR's phone showed numerous phone numbers to include 602-341-1662 (phone number intercepted by HSI agents for OCHOA-Vasquez to conduct illegal activity) and 520-470-3680 (phone number for known smuggling associate of OCHOA-Vasquez as Mexican based human smuggling coordinator Glicerio SANTOS-Gaspar). TOVAR provided numerous locations in which he would drop off aliens or participate in smuggling related activity, which included the mechanic shop at 1931 W. Cheryl Drive, and OCHOA-Vasquez's apartment at 2611 N. 36th Street #S104 in Phoenix, Arizona.

32. On April 20, 2021, US Border Patrol Agent (BPA) Mark Metheny was assigned to the US Border Patrol immigration checkpoint located on FR15 in North Komellik, Arizona. BPA Metheny encountered Jacqueline RAMIREZ-Flores driving a 2017 Dodge Charger that had empty water bottles and mesquite leaves covering the back seat of the vehicle. The vehicle

was sent to secondary inspection and RAMIREZ-Flores was questioned as to her travel and suspected human smuggling activity.  RAMIREZ-Flores eventually admitted that she had smuggled aliens in the past, and that on this date she had dropped off water near milepost 109 on SR86 for a group of 16 aliens, adding that another group of 21 aliens was going to be headed to that same location later in the day.  RAMIREZ-Flores said that she had dropped off three illegal aliens south of the immigration checkpoint, and had transported 4 more illegal aliens to Phoenix, Arizona from Sierra Vista, Arizona on April 18th, 2021and April 19th, 2021.  During a consent search of her phone, RAMIREZ-Flores said that she dropped off aliens at 1823 W. Cheryl Drive, where they would be picked up by a white Chevrolet Tahoe (Arizona plate CHD9401) and would be paid $1,300 per person.  A photo in a WhatsApp conversation with a person named "Myrka" was a photo of the aforementioned license plate attached to the white Chevrolet Tahoe.  Agents had identified that vehicle as the same vehicle and license plate used by BARRON-Arredondo during the course of this investigation to transport countless aliens to and from the mechanic shop to his stash trailers and had been involved in countless smuggling events. SA Lakosky had also identified the parking lot of the location provided by RAMIREZ-Flores as a location that OCHOA-Vasquez had met with a smuggling associate in the past, as it was less than 20 seconds of travel time to the east of the mechanic shop.

## Grand Jury Indictments

33. On May 12, 2021, the federal grand jury in the United States District Court for the District of Arizona in Tucson, Arizona indicted OCHOA-Vasquez, FLORES-Galvez, BARRON-Arredondo, Carlos BARRON, and 17 other co-conspirators relating to violations of 8 USC

1324 Conspiracy to Bring in or Harboring Illegal Aliens and 18 USC 1956 Conspiracy to Commit Money Laundering in regard to this investigation.

**Toll analysis**

34. On March 25, 2021, a subpoena was sent to Verizon Wireless for toll records regarding telephone number 602-702-2484.  This phone number was identified by agents as one of many numbers utilized by OCHOA-Vasquez to coordinate alien smuggling and money laundering activities and was intercepted from September of 2018 through September of 2019 pursuant to federal court orders to intercept wire and electronic communications linked to this number.  The records received from the subpoena indicated tolls from April 20, 2021 through May 20, 2021.  While reviewing the records, SA Lakosky identified that OCHOA-Vasquez was in contact with the following phone numbers that were also intercepted during the investigation conducting human smuggling and money laundering activities:

    a.  602-300-9112: Carlos BARRON-Arredondo (indicted co-conspirator)

    b.  480-374-9970: Alberto ROJAS-Rojas (human smuggling co-conspirator)

    c.  502-387-5170: Isaac GONZALEZ-Matul (indicted co-conspirator)

    d.  602-518-1880: Esteban AYALA (human smuggling/money laundering co-conspirator)

**CONCLUSION**

Based on the information contained within this affidavit, your affiant submits that there is sufficient probable cause to believe that the properties located at 11735 N. 19th Avenue #A30 and B66, Phoenix, Arizona, have been and continue to be involved in money laundering and human smuggling activity, and contain evidence of the violations of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to commit alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(iii),

harboring illegal aliens, and 8 U.S.C. § 1324(a)(1)(A)(v)(II), aiding or abetting the crime of alien smuggling; and 18 U.S.C. § 1956 Conspiracy to Commit Money Laundering. Your affiant requests permission to search the property described in Attachment A for the items listed in Attachment B.

Respectfully submitted,

CHAD L LAKOSKY   Digitally signed by CHAD L
LAKOSKY
Date: 2021.06.04 13:26:57 -07'00'

Chad Lakosky, Special Agent
Homeland Security Investigations

Subscribed and sworn to me telephonically this  4th  day of June 2021.

Hon. Jacqueline M. Rateau
United States Magistrate Judge

**ATTACHMENT A**

**DESCRIPTION OF PROPERTY TO BE SEARCHED**

The property to be searched is 2611 N. 36th Street #S104 in Phoenix, Arizona in the Whispering Pines apartment complex. This location is an apartment located on the northeast corner of the property on the second floor of building "S".  The apartment has a blue security door equipped with a gold handle and dead bolt lock.







## ATTACHMENT B
## ITEMS TO BE SEIZED

1. Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, harboring, and smuggling of illegal aliens.

2. Papers, tickets, notes, receipts, and other items relating to domestic and international travel.

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, and cashier checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment and /or expenditure of money.

4. Electronic equipment, such as cellular telephones and computers, utilized in the communication and coordination of the smuggling of illegal aliens, and the payment of such activities.

5. United States currency or foreign currency.

6. Photographs, including still photos, negatives, videotapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or illegal aliens.

7. Address and/or telephone books, Rolodex indices, electronic organizers, and papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, customers, financial institutions, and other individuals or businesses with whom a financial relationship exist.

8. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, by not limited to utility and telephone bills, canceled envelopes, rental, purchase of lease agreements, and keys.

9. Firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns and other weapons, and any records or receipts pertaining to firearms and ammunition.

10. The opening and search and removal, if necessary, of any safe or locked receptacle or compartment, as all or some of the property heretofore may be maintained inside.

11. Illegal aliens.